UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

William Robert Dixon,                           Case No. 3:17-cv-01476

    Plaintiff

v.                                              MEMORANDUM OPINION
                                                AND ORDER

Warden Coleman, et al.,

    Defendants

### BACKGROUND AND HISTORY

*Pro se* Plaintiff William Robert Dixon filed this action under 42 U.S.C. § 1983 against Toledo Correctional Institution ("ToCI") Warden Coleman, ToCI Doctor Delacruz, ToCI Health Care Administrator Godsey, ToCI Health Care Administrator Kroggel, Ohio Department of Rehabilitation and Correction ("ODRC") Assistant Medical Chief Inspector Mona Parks, ODRC Assistant Chief Inspector Kelly S. Rickle, ODRC Security Threat Group ("STG") Officer Matt Gillum, ODRC STG Officer D.J. Norris, ODRC STG Officer Todd Friend, Investigator Casey Bar, Marion Correctional Institution ("MCI") Warden Wainwright, MCI Investigator Walker, MCI Rules Infraction Board ("RIB") Lieutenant Brewer, MCI STG Lieutenant Thomas, MCI Corrections Officer Haines, MCI Captain Ash, MCI Lieutenant Byrd, MCI Sergeant Hyland, RIB Appeals Board Member Ms. Shaw, MCI Institutional Inspector R.D. Smith, MCI Corrections Officer Franklin, ToCI STG Officer Lieutenant Bennet, Mansfield Correctional institution ("MANCI") Institutional Inspector King, and ODRC Director Gary Mohr.

Plaintiff breaks his Complaint into seven potential claims, which he characterizes as "assignments of error:" (1) denial of access to the courts; (2) wrongful profiling as a gang member; (3) denial of due process at an RIB hearing; (4) denial of medical care; (5) assessment of court costs leaving only $10.00 in his inmate account each month; (6) denial of an effective grievance procedure; and (7) property items were missing in transit between institutions. (Doc. No. 1). He seeks monetary damages and injunctive relief. Plaintiff also filed two motions to amend the Complaint and one motion for leave to file for injunctive relief, which largely mirror the initial Complaint. (Doc. Nos. 28, 30, 37).

Plaintiff was convicted in 2006 in Montgomery County, Ohio and sentenced to twenty-one years in prison. He was incarcerated in the Southern Ohio Correctional Facility ("SOCF") in November 2011 when he was assaulted by other inmates. He was stabbed seven times and hit with football-sized rocks. In the aftermath, Plaintiff was sent to the Ohio State Medical Center for treatment of his injuries. He claims he was placed back at SOCF after his surgery and was denied proper physical therapy, telephone access, visitation, and legal materials. Further, he contends he was placed on the lowest dose of pain medication. Plaintiff was transferred to Nevada in 2012 and remained there until 2014, when he was transferred back to Ohio to ODRC's Corrections Reception Center ("CRC"). From there, he was transferred to ToCI. He was transferred to MCI and then to MANCI. He was then transferred back to ToCI.

Plaintiff's first and fifth assignments of error are asserted against MANCI Institutional Inspector King, and ODRC Director Gary Mohr. In these assignments he contends that the institution assesses court costs from his prison trust account, leaving just $10 in his account each month. Plaintiff contends this practice does not leave sufficient funds in his account to purchase all the items he needs from the prison commissary. He also contends that inmates are provided with

2

an indigent legal kit, but this does not permit them to make free photocopies. He alleges this denies him access to the courts.

Plaintiff's second assignment of error is asserted against ODRC Assistant Chief Inspector Kelly Rickle, ODRC STG Officers Gillum and Norris, ToCI STG Officer Lieutenant Bennett, and ODRC Director Mohr. He claims he was helping the FBI in 2009 acting as an informant in the hope of obtaining a reduced sentence. Instead, he was sent to SOCF. He contends his attorney did not file a proper habeas petition in 2011. He was labeled as a member of the Simon City Royals gang. He indicates his status as an informant was discovered and he was transferred to Nevada for his protection. He contends he was forced to sign a paper indicating he is a gang member. He further contends that this false STG profile was used at MCI to deny him second level programming and judicial release. He does not specify a particular cause of action.

Plaintiff's third assignment of error is asserted against Rickle, Gillum, Norris, Thomas, Friend, Brewer, Wainwright, Walker, Haines, Ash, Byrd, Frankland, Hyland, Shaw, Smith, and Mohr. Plaintiff contends that on February 26, 2017, Haines and Ash attempted to murder another inmate. The inmate survived the alleged assault. Plaintiff alleges Haines, Byrd, and Frankland, attacked the same inmate when he returned to MCI and this time in murdering that inmate. He contends that Corrections Officer Crawford confided in him that she had been ordered to cover up the murder and she was having difficulty doing so. Plaintiff contends he reported Crawford's statement to Lieutenant Thomas. He alleges the Defendants then falsified a gang history profile associating him with gang membership. There was a Rules Infraction Board hearing, and while Plaintiff does not explain the nature of these charges, it appears they may have concerned gang activity. He was found guilty of the charges, and contends he was denied due process in being convicted of those charges.

Plaintiff's fourth assignment of error alleges denial of proper medical care, and is asserted against Dr. Delacruz, HCA Godsey, HCA Kroggel, Warden Coleman, Medical Chief Inspector Mona Parks, and Mohr. He states he was stabbed in November 2011 at SOCF and, after his surgery, was given the lowest possible dosage of pain medication. When he was returned from Nevada to the Ohio CRC in 2014, prison doctors refused to prescribe any pain medication. When he later arrived at ToCI, he received pain medication for nine months, but at the lowest available dose, after which his medications were discontinued.

Plaintiff's sixth assignment of error is asserted against Mohr, Smith, King, Rickle, Friend, Thomas, Brewer, Ash, Byrd, Shaw, Franklin Walker, and Wainwright. He contends he was denied an effective grievance procedure. He alleges the grievance deadlines do not allow for mail delays and claims he has a paper trail proving he filed all of his grievances properly. He does not specify a legal cause of action.

Finally, Plaintiff's seventh assignment of error is asserted against Institutional Inspector Smith, Institutional Inspector King, Mohr, Thomas, Walker, and Warden Wainwright. He contends that when he was at MCI, Thomas took half of his property to the office. His items and his legal box were placed in the STG office rather than in the property office. Plaintiff discovered some of his property was missing. He states the items were in staff members' possession. He indicates Smith told him the property would be replaced but then reneged on the offer. He does not specify a legal cause of action.

## STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), I am required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898

4

F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, I must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

A motion to amend the complaint must be considered under these standards as well. That is, while "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend should be denied as futile if the proposed amendment does not satisfy the pleading standard articulated above. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

## ANALYSIS

As an initial matter, I will note that because Plaintiffs' one-page motion to amend the complaint fails to state any facts but instead is "an unadorned, the-Defendant-unlawfully-harmed-me accusation," it fails to comply with the requisite pleading standards. Therefore, the first motion to amend the complaint is denied. (Doc. No. 28).

5

## A.      Second and Fourth Assignments of Error

The doctrine of *res judicata* dictates that a final judgment on the merits of a claim precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of every issue actually brought before the court and every issue or defense that should have been raised in the previous action. *Id.* The purpose of this doctrine is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). A subsequent action will be subject to a *res judicata* bar only if there is an identity of the facts creating the right of action and of the evidence necessary to sustain each action.

This is Plaintiff's third civil rights case concerning some of these matters. Plaintiff filed a previous lawsuit in the Southern District of Ohio, *Dixon v. Mohr*, No. 1:12 CV 294 (S.D. Ohio Mar. 28, 2013), in which he challenged his arrest, prosecution, trial, conviction, and sentence. He also asserted he was stabbed and assaulted by other inmates at SOCF, was denied pain medication, was not given a proper hospital bed, did not receive physical therapy, and was not given proper follow up visits with a physician. He also claimed Defendants did not protect him from the assault.

The District Court in the Southern District of Ohio dismissed all of his claims pursuant to 28 U.S.C. § 1915(e) except for his claim for failure to protect. That claim was dismissed without prejudice for failure to exhaust administrative remedies. Plaintiff filed a second lawsuit in this District Court, *Dixon v. Mohr*, No. 3:15 CV 1999 (N.D. Ohio Dec. 29, 2015) (Zouhary, J.). In the second suit, he asserted he was denied access to the courts, his attorney "botched" his Habeas Petition in 2011, he was denied an effective grievance procedure, he was denied proper medical care after his 2011 surgery, Norris made him sign a paper indicating he had gang affiliations when he was

just helping the FBI, and he is actually innocent of the charges for which he was convicted. Those claims were dismissed pursuant to 28 U.S.C. § 1915(e).

Plaintiff's second and fourth assignments of error were asserted in his previous civil rights cases. In his second assignment he claims he was helping the FBI in 2009 acting as an informant in the hope of obtaining a reduced sentence. He contends his attorney did not file a proper habeas petition in 2011. He was labeled as a gang member of the Simon City Royals gang. He indicates his status as an informant was discovered and he was transferred to Nevada for his protection. He contends he was forced to sign a paper indicating he is a gang member.

In his fourth assignment, he alleges he was stabbed in November 2011 at SOCF and, after his surgery, was given the lowest dose of pain medication. When he was returned from Nevada in 2014, prison doctors refused to prescribe any pain medication. He indicates when he arrived at ToCI, he received pain medication for nine months at the lowest available dose and then his medications were discontinued.

Because the facts creating the right of action and of the evidence necessary to sustain each action for Plaintiff's second and fourth assignments of error are the same as those asserted in his previous two civil suits, these assignments of error are barred by the doctrine of *res judicata*. Plaintiff is precluded from litigating these claims for a second or third time.

In his second motion to amend the complaint, Plaintiff restates these second and fourth assignments of error as his third, fourth, eighth, and ninth claims for relief. For the same reasons discussed above, it would be futile to amend the complaint not only because these claims were already asserted in the original complaint, but also because the claims ultimately fail as a matter of law. As such, leave to amend must be denied.

**B.     First and Fifth Assignments of Error**

Plaintiff's first and fifth assignments of error are without merit. He challenges the deduction of court costs from his prison trust account as a denial of access to the courts because it limits his ability to purchase other things from the commissary and he is not provided with free copies. To state a claim for denial of access to the courts, Plaintiff must allege particular actions of Defendants prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, without which a Plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

In order words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by Defendants. *Lewis*, 518 U.S. at 353. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the Complaint...." *Christopher*, 536 U.S. at 415.

Here, Plaintiff objects to having to pay for court costs from his prison trust account because it limits the funds available to him. He contends the prison's indigence policy does not provide for free photocopies. The constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See, e. g., Bell-Bey, v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. Mar. 28, 1994) ("the law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying services"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, at *1 (6th Cir. Mar. 31, 1993) ("the right to have access to the courts is not interpreted as requiring unlimited access to photocopiers"); *Riddle v. Caruso*, No. 2:10-cv-156, 2010 WL 3851960, at *5 (W.D. Mich. Sept. 27, 2010). Furthermore, Plaintiff has not demonstrated that he was prevented from filing a

8

non-frivolous habeas corpus petition or civil rights action because of the Defendants' actions. He fails to state a claim for denial of access to the courts.

Plaintiff restates these allegations presented as his first and fifth assignments of error as his first and second claims for relief in the second motion to amend the complaint. But like the original complaint, the factual allegations in the second motion to amend fail to state a claim for denial of access to the courts. Therefore, amending the complaint in this manner would be futile and leave to do so must be, and is, denied.

**C.    Third Assignment of Error**

In his third assignment of error, Plaintiff appears to challenge a disciplinary hearing claiming he was denied due process. The Court's ability to review prison disciplinary proceedings is limited. District courts have no authority to review a disciplinary committee's resolution of factual disputes, or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Mass. Corr. Inst. at Wolpole v. Hill*, 472 U.S. 445, 455 (1985). The only question for the Court to determine is whether the hearing complied with the basic requirements needed to satisfy due process. The standard is not a difficult one to meet.

To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972). Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. *Id.* at 569-70.

Furthermore, due process requires only that disciplinary findings resulting in the loss of good time credits be supported by "some evidence" in the record. *Superintendent, Massachusetts Correctional Institution at Wolpole*, 472 U.S. at 454-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* The RIB is not required to base findings on overwhelming or irrefutable proof of guilt. Even where the evidence is contradictory or partially exculpatory, the RIB may base a finding of guilt on only "some evidence" that indicates the prisoner is guilty. *Id.* at 457.

In this case, although Plaintiff attempts to characterize his claim as a denial of due process, he simply attacks the result of the disciplinary hearing. He does not complain about the hearing process, nor does he suggest he did not have sufficient notice of the charges. While Plaintiff disputes the RIB's resolution of factual issues and his finding of guilt, he has not sufficiently demonstrated he was denied due process.

Plaintiff makes these similar allegations in his second motion to amend the complaint, stating this as his sixth claim. For the same reasons discussed above, amending the complaint to restate this claim would be futile, and leave must be denied.

**D.     Sixth Assignment of Error**

Plaintiff contends in his sixth assignment of error that he has been denied an effective grievance procedure. There is no constitutionally protected due process right to unfettered access to prison grievance procedures. *Walker v. Mich. Dept. of Corr.*, No. 04-1347, 2005 WL 742743, at *4 (6th Cir. April 1, 2005). Plaintiff fails to state a claim upon which relief may be granted. In turn, because Plaintiff's seventh claim in his second motion to amend is based upon this same legal theory, leave to amend the complaint to restate this claim must be denied as futile.

**E.      Seventh Assignment of Error**

Finally, Plaintiff alleges his personal property was placed in the STG office and some of it was lost.  Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials.  Rather, the statute is a remedy for only those wrongs that offend the Constitution.  To the extent this claim could arise under § 1983, it would have to be construed as one asserting a deprivation of property without procedural due process. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).  Therefore, in a § 1983 suit claiming the deprivation of a property interest without procedural due process, Plaintiff must plead and prove that state remedies for redressing the wrong are inadequate.  *Vicory*, 721 F.2d at 1064.  In a procedural due process case under § 1983, Plaintiff must attack the state's corrective procedures as well as the substantive wrong.  Plaintiff has a remedy for property deprivation in the Ohio Court of Claims.  *See Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989).  Plaintiff has not demonstrated this remedy is inadequate for redressing the wrong alleged.  He fails to state a claim for deprivation of property without due process.

The same is true for Plaintiff's fifth claim in his second motion to amend the complaint, which essentially restates this assignment of error.  That is, for the same reasons the seventh assignment of error must be dismissed for failure to state a claim, leave to amend to add the fifth claim must be denied as futile.

**F.      Remaining Claim from Second Motion to Amend the Complaint**

As discussed above, because the first through ninth claims set forth in Plaintiff's second motion to amend the complaint essentially restate those presented in his original complaint, and because those in his original complaint fail to state a claim for relief, leave to amend to add those first nine claim must be denied as futile. Not asserted in the original complaint is Plaintiff's general complaint about the courts.

In this tenth claim, Plaintiff contends his constitutional rights were violated by certain courts when issuing opinions, which included details that Plaintiff alleges were unnecessary and negatively impacted him in prison. But judges – state and federal – are "absolutely immune from liability for their judicial acts." *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983) (citations omitted). This absolute "judicial immunity is an immunity from suit, not just from ultimate assessment of damages" and cannot be "overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Whether an act is "judicial" depends on the "nature of the act itself." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Relevant considerations for this determination include whether the act was "a function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity." *Id.* Here, Plaintiff's allegations are related solely to the opinions written and issued by these judicial officers. Because writing and issuing opinions are functions exclusively performed by judges, absolute judicial immunity applies to bar this claim. Therefore, Plaintiff has failed to state a claim for relief, and leave to amend would be futile.

In sum, the second motion to amend the complaint contains only allegations for which no relief may be granted for the foregoing reasons. Therefore, leave to amend the complaint must be denied as futile.

**G.     Motion for Leave to File Request for Injunctive Relief**

Finally, I turn to Plaintiff's motion for leave to file for injunctive relief, which I will treat as an additional motion to amend. In the motion, Plaintiff alleges three violations. In the second and third, Plaintiff restates his property theft, gang member profiling, and FBI-related allegations previously stated as his second, third, and seventh assignments of error. For the reasons discussed above related to these assignments of error, leave to file for injunctive relief as to the second and third allegations in this motion must be denied on grounds of futility.

Remaining in this motion is Plaintiff's claim related to his alleged status as "an Ashkenazi Jewish man who believes in Christ." (Doc. No. 37 at 1-2). Plaintiff alleges he filed several accommodation forms for kosher meals and religious holidays related to his religion, which ODRC lost. After Plaintiff filed multiple grievances related to this accommodation request, ODRC finally denied the request due to insufficient information to support Plaintiff's religious belief.

At the outset, it is unclear when Plaintiff requested this accommodation or filed the related grievances. Without this information, I cannot ascertain whether Plaintiff filed this § 1983 free exercise claim within the required two-year statute of limitations. *See Heyward v. Cooper*, No. 3:16-cv-2774, 2019 WL 1428341, at *5 (N.D. Ohio Mar. 29, 2019). Even assuming this was filed within the statute of limitations, the claim must fail.

"A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). Even if a prisoner is able to establish both, "[a] practice will not be considered to infringe on a prisoner's free exercise unless it 'places[s] a substantial burden on the observation of a central religious belief or practice.'" *Long v. Sloan*, No. 1:18CV1364, 2019 WL 4396079, at * 10 (N.D. Ohio May 23, 2019) (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)), *report and recommendation adopted*, 2019 WL 3229073 (N.D. Ohio July 18, 2019). That is, to be considered a constitutional violation, "[t]he prison's policy must place significant pressure on an inmate to modify his behavior and violate his religious beliefs." *Long*, 2019 WL 4396079, at *10 (citing *Lyng v. Nw. Indian Cemetary Protective Ass'n*, 485 U.S. 439, 450 (1988)).

In this case, Plaintiff refers to himself as an Ashkenazi Jew by blood throughout the record, (*see, e.g.*, Doc. No. 30 at 12; Doc. No. 32), but he specifically states that his "family never practiced Judaism" but held a "Messanic Christian belief." (Doc. No. 32-1 at 5). The first mention of his

13

desire to practice Judaism is found in his final motion for injunctive relief. But assuming the facts of this motion are true, as I must at this stage in the litigation, Plaintiff has sufficiently stated he had a sincerely-held belief in the Jewish faith, including a kosher diet and Jewish holidays.

But I do not find the denial of Plaintiff's accommodation request placed a "substantial burden" of his practice of Judaism. Plaintiff himself characterizes the alleged deprivation of these religious rights to be a "small" violation, (Doc. No. 37 at 1), rather than a "substantial burden." In light of the facts alleged by Plaintiff, I agree.

First, there is no constitutional right to a kosher diet, but a "right not to eat offending food." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). "If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Id.* Plaintiff does not state that the food he is currently provided with and permitted to eat, in accordance with his sincerely-held beliefs, is insufficient to sustain his good health. In fact, though he names numerous ailments throughout the record, malnutrition resulting from the lack of a kosher diet is noticeably absent. As such, I must conclude Plaintiff has failed to state a constitutional violation in being deprived the requested kosher diet.

Second, Plaintiff's bare assertion that he has been deprived the right to "practice" and "receive" "Jewish holidays" is insufficient to state a claim of "substantial burden" on his religious rights. Plaintiff states no facts to suggest he needed an accommodation to observe any Jewish holiday. That is, Plaintiff states no facts showing that, by denying his accommodation, the prison was effectively placing significant pressure on him to modify his behavior or violate his faith. As such, without more, I cannot conclude denying the accommodation resulted in a "substantial burden" on Plaintiff's ability to practice his Ashkenazi Jewish faith.

Ultimately, "simply requesting a religious accommodation is not enough." *Bennett v. Burt*, No. 1:16-cv-1203, 2016 WL 7034240, at *7 (W.D. Mich. Dec. 2, 2016) (citing cases). Here, Plaintiff

14

has failed to state sufficient fact to show the prison "substantially burdened" his alleged religious belief. Therefore, leave to move for this injunctive relief is denied as futile.

## CONCLUSION

Having considered and examined the *pro se* Plaintiff's pleadings and motions to amend to determine their legal viability, I conclude they fail to state a claim upon which relief may be granted. Therefore, this action is dismissed pursuant to 28 U.S.C. § 1915(e), and the motions to amend and motion for leave to file for injunctive relief are denied. (Doc. Nos. 28, 30, & 37). I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. This case is closed.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge